## STATE OF NORTH DAKOTA EX REL. A. J. DUSHEK, Respondent, v. T. WATLAND, M. F. Hrabe, and W. H. Robbins, Copartners Doing Business under the Firm Name of the Independent Grain Company, Appellants.

(39 A.L.R. 1169, 201 N. W. 680.)

**Master and servant — employer failing to comply with compensation act liable to injured employee without regard to fault.**

1. Following Fahler v. Minot, 49 N. D. 960, 194 N. W. 695, it is held that the Workmen's ·Compensation Act (Laws 1919, chap. 162) substitutes the principle of compensation for that of liability for fault; and that an injured employee, who sustains injuries in the course of an employment covered by the act, is, in all cases, entitled to compensation for the damages suffered. In case the employer has complied with the Workmen's Compensation Act, and paid the required premiums, the employer is relieved of liability and the employee is entitled to be compensated out of the Workmen's Compensation Fund; but in case the employer has failed to comply with the Workmen's Compensation Act he is liable to such injured employee for the damages so sustained, without regard to fault.

**Master and servant — remedies against employer failing to comply with compensation act stated.**

2. Under § 11 of the Workmen's Compensation Act, an employee, who sustains injuries compensable under such Act, and whose employer has failed to comply therewith, is afforded one of two remedies; (1) He may maintain a civil action against his employer for the damages suffered; or, (2) He may in lieu of such action apply to the Workmen's Compensation Bureau for compensation under the act. In case the latter remedy is pursued the Workmen's Compensation Bureau is required to proceed in like manner as in other claims before the bureau. In other words, the bureau proceeds to determine the question of liability in precisely the same manner as though the employer had complied with the Act, and the claim of the injured employee was made against the Workmen's Compensation Fund.

**Master and servant — noncomplying employer, in action to enforce award of compensation bureau, may show employee's injuries not within compensation act.**

3. The award of the Workmen's Compensation Bureau against a noncomply-

---

Note.—(5). Constitutionality of statute penalizing unsuccessful appeal to courts from action of administrative board, see annotation in 39 A.L.R. 1181.

ing employer is not final or conclusive upon the fundamental or jurisdictional questions involved in the award; but such questions are subject to judicial review; and, in an action to enforce the award the defendant employer may assert as a defense any fact tending to show that the alleged injuries for which the award was made were not subject to the operation of the Workmen's Compensation Act, and, hence, that the claim was not within the jurisdiction of the Compensation Bureau.

**Jury — in action to enforce award noncomplying employer entitled to jury trial on issues relative to compensation bureau's jurisdiction.**

4. The award of the Compensation Bureau against a noncomplying employer is enforcible only by means of a civil action in the name of the state for the benefit of the person or persons entitled to the same. And in such action the defendant employer is entitled to a trial by jury of the issues of fact relating to the jurisdiction of the Compensation Bureau; but on the finding of such issues in favor of the plaintiff the amount of the verdict will be the sum fixed by the Compensation Bureau under the schedule provided in the statute.

**Constitutional law — due process or equal protection of laws cannot be taken away indirectly by imposing upon right of appeal such conditions as to intimidate from exercising right; constitutional guaranty of right to judicial review violated by statute giving right only on condition of paying large penalty if unsuccessful.**

5. The legislature may not indirectly deprive a party of due process or equal protection of the laws by imposing such conditions upon the right to appeal to the courts as to intimidate the person affected from exercising such right; and where the findings of an administrative bureau, as to matters concerning which a party affected is constitutionally entitled to an opportunity of judicial review, are made subject to such review only on the condition that if the party is unsuccessful in the courts he shall pay a large penalty, there is not afforded that opportunity of judicial review guaranteed by the constitution.

Opinion filed November 15, 1924.

Constitutional Law, 12 C. J. § 1015 p. 1239 n. 86 New. Workmen's Compensation Acts, C. J. § 4 p. 6 n. 23, p. 7 n. 25, 26; § 45 p. 53 n. 87; § 46 p. 54 n. 2; § 115 p. 117 n. 56 New; § 148 p. 130 n. 46 New; § 154 p. 135 n. 40, 41 New; § 174 p. 145 n. 55.

Appeal from the District Court of Pierce County, *Burr*, J.

Defendants appeal from a judgment and from an order denying a motion for a new trial, judgment not withstanding the verdict or for a new trial.

Modified and affirmed.

*Palda & Aaker,* for appellant.

The plaintiff, in any event must assume the burden of proof to show that when injured, he was an employee of the defendants, and, that his injury arose out of and in the course of his employment, that is, while he was performing some duty, which was necessarily connected with the particular work which he was employed to perform. Sparks v. Mining Co. (Iowa) 190 N. W. 593; Mann v. Glastonbury Knitting Co. 90 Conn. 116, L.R.A.1916D, 86, 96 Atl. 368; Spooner v. Detroit Saturday Night Co. (Mich.) 153 N. W. 675; L.R.A.1916A, 17; Wilson v. Dakota L. & P. Co. (S. D.) 186 N. W. 828.

The terms "out of" and "in the course of" are not synonymous, and if either of these elements are missing, there can be no recovery. Note in L.R.A.1916A, 232.

It is not the intent of the law to make an employer an absolute insurer of the employee outside of the compensation fund. Mann v. Glastonbury Knitting Co. supra.

The act creates new rights as against the insurance fund but not as against the employer. Hunter v. Colfax Consol. Coal Co. 175 Iowa, 245, L.R.A.1917D, 15–18, 154 N. W. 1037.

When the injury arises from his own act, the claimant must first show that the act which caused it was within the scope of his employment; and if the act is one which has no direct relation to his employment or to the conditions surrounding the work there is no presumption that the master has assented to it in advance. Mann v. Glastonbury Knitting Co. 90 Conn. 116, L.R.A.1916D, 86, 96 Atl. 368.

An injury received while the plaintiff was working or meddling with a machine with which he had no work to perform was not from accident arising out of and in the course of the employment.

If it was not part of plaintiff's duty to start an engine, she was not entitled to compensation for injuries received while attempting to start it. Lash v. Evans, 51 Week. Rep. 243.

Ordinarily where workmen are not employed to work with machinery or in close proximity thereto they are held not entitled to compensation for injuries received where they voluntarily put themselves in a position to be injured thereby, the theory being that they thereby subject themselves to dangers not incident to the work which they are

employed to do.   An accident does not arise out of the employment if at the time, the workmen is arrogating to himself duties which he was neither engaged nor entitled to perform.   Note in L.R.A.1916A, 48 and cases cited.   Also see Mepham v. Industrial Commission, 289 Ill. 484, 124 N. E. 540.

The trial court erred in withdrawing the defense that the defendant was wholly free from fault and the injury due wholly to the employee's own negligence.   Hunter v. Colfax Consol. Coal Co. 175 La. 245, L.R.A.1917D, 15, 154 N. W. 1037.

It is only the employer who is within the compensation and provisions of these acts who is liable when he has not been negligent.   Annotations in L.R.A.1917D, 90, and cases cited.

In order to stand the test of constitutionality, most of the statutes make it optional with the employer and employee to accept or reject the compensation features.   But provisions amounting almost to coercion are made in order to induce both parties to subscribe to them. Note in L.R.A.1917D, 90.

The provisions of part 2 of the Minnesota act impair no constitutional right, as they apply to those who have voluntarily chosen to become subject thereto.   Mathewson v. Minneapolis Street R. Co. 126 Minn. 286, L.R.A.1916D, 412, 148 N. W. 71, 5 N. C. C. A. 871.

The Texas act invades no fundamental right of employers, since it leaves them free to adopt a plan of compensation or to remain ungoverned by it.   Middleton v. Texas Power & Light Co. (Tex.) 185 S. W. 556, 11 N. C. C. A. 873.

An employer is not deprived of his property without due process of law by the provisions of an elective workmen's compensation act. Re Madden (1916) 222 Mass. 487, L.R.A.1916D, 1000, 111 N. E. 379; Nosky v. Farmers Union Co-op. Asso. (Neb.) 191 N. W. 846.

Our courts have held that an action at law for the recovery of money only is triable to a jury as a matter of strict legal right.   Hanson v. Carlblom, 13 N. D. 361, 100 N. W. 1084; Gorthy v. Jarvis, 15 N. D. 509, 108 N. W. 39.

In an action brought against an employer for damages to an employee, the cause was properly triable to a jury.   Urnstad v. Colgate Farmers Elevator Co. 18 N. D. 309, 122 N. W. 390.

The right guaranteed by the constitution means the right as it ex-

isted at time of adoption of the Constitution. Barry v. Traux, 13 N. D. 131, 65 L.R.A. 762, 99 N. W. 769.

. Due process of law, as that phrase is used in the Federal and State Constitutions, means in the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights; securing to every person a judicial, though not necessarily a court trial before he can be deprived of life, liberty or property. Carnegie Natural Gas Co. v. Swiger, 72 W. Va. 557, 46 L.R.A. (N.S.) 1073, 79 S. E. 3.

It is created by the act purely as an administrative agency to bring into being and administer the insurance fund, and the fact that it is empowered to classify persons who come under the law, and to ascertain facts as to the application of the fund, does not vest it with judicial power within the constitutional sense. State ex rel. Yaple v. Creamer, 85 Ohio St. 349, 39 L.R.A.(N.S.) 694, 97 N. E. 602.

*J. E. McCarthy,* for respondent.

The voluntary offer of a willing servant to make himself useful in a matter not covered by any express command, when the preferred service is accepted by his superior, although not by an approval expressed in words, cannot be said as a matter of law, to put the servant outside the limits of his employment. Miner v. Franklin Tel. Co. 26 L.R.A.(N.S.) 1195.

CHRISTIANSON, J. This is an action to enforce an award of the Workmen's Compensation Bureau, in favor of the relator and against the defendants, in the sum of $2,543.00.

The award was made under § 11 of the Workmen's Compensation Act (Laws 1919, chap. 162) which reads:

"Employers subject to this Act, who shall fail to comply with the provisions of Sections six and seven hereof, shall not be entitled to the benefits of this Act during the period of such non-compliance, but shall be liable to their employees for damages suffered by reason of injuries sustained in the course of employment, and also to the personal representatives of such employees where death results from such injuries, and in such action the defendant shall not avail himself or itself of the following common law defenses:

"The defense of the fellow-servant rule, the defense of the assumption of risk or the defense of contributory negligence.

"And such employers shall also be subject to the provisions of Section eight.

"Any employee whose employer has failed to comply with the provisions of Sections six and seven hereof, who has been injured in the course of his employment, wheresoever such injury has occurred, or his dependents in case death has ensued, may, in lieu of proceeding against his employers by civil action in the court, file his application with the Workmen's Compensation Bureau for compensation in accordance with the terms of this Act, and the Bureau shall hear and determine such application for compensation in like manner as in other claims before the Bureau; and the amount of the compensation which said Bureau may ascertain and determine to be due to such injured employee, or to his dependents in case death has ensued, shall be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed and determined by the Bureau; and in the event of the failure, neglect or refusal of the employer to pay such compensation to the person entitled thereto, within said period of ten days, the same shall constitute a liquidated claim for damages against such employer in the amount so ascertained and fixed by the Bureau, which with an added penalty of fifty per cent, may be recovered in an action in the name of the state for the benefit of the person or persons entitled to the same."

(Section 6 of the Act provides:—"Every employer subject to this act shall contribute to the North Dakota Workmen's Compensation Fund in proportion to the annual expenditure of money by such employer for the service of persons subject to the act, the amount of such payments and the method of making the same to be determined as hereinafter provided.

"An employer securing the payment of compensation by contributing premiums to the Workmen's Compensation Fund shall thereby be relieved from all liability for personal injuries or death sustained by his employees and the persons entitled to compensation under this act shall have recourse therefor only to the North Dakota Workmen's Compensation Fund and not to the employer."

Section 7, provides for the classification of risks, and the fixing of

premium rates, etc.  Section 8, provides for the collection of premiums and authorizes the bringing of civil action for that purpose.)

The complaint alleges that during all the times mentioned in the complaint the defendants were engaged in the elevator, grain and feed-mill business at Knox, Benson county, North Dakota; that on or about February 2nd, 1920, the relator A. J. Dushek was employed by the defendants as a laborer to load cars and grind feed; that on said date while so employed and in the performance of the labor which he was employed to perform said relator was accidentally injured; that the defendants had wholly failed to comply with the provisions of the Workmen's Compensation Act of the State of North Dakota; that on or about May 4th, 1920, the relator filed with the Workmen's Compensation Bureau due and regular notice of injury and that he had elected to submit his claim for said personal injuries to the determination of the Workmen's Compensation Bureau; that on or about said date he filed with said Bureau an application for a determination of the amount of compensation due him from said defendants for such injury; that a hearing was ordered; that defendants were duly notified of said hearing and that the relator and the defendants appeared in person and by their counsel; that after proceedings duly had before them, and after receiving evidence and hearing the parties, the Workmen's Compensation Bureau, on or about July 1st, 1921, made an award wherein they found that plaintiff had sustained injuries in the course of his employment; and further found that he was entitled to compensation in the aggregate sum of $2543.00; that notice of such award was served on defendants on July 25th, 1921; that the defendants failed, neglected and refused to pay the same or any part thereof and that more than thirty days have elapsed since notice of said award was served upon the defendants; that by virtue of the provisions of Section 11 of the Compensation Act the said award constitutes a liquidated claim against the defendants and each of them and that said plaintiff is entitled to recover judgment against the defendants for the full amount of said award with an added penalty of fifty per cent, amounting in all to the sum of $3814.50, together with interest at the rate of 6% per annum from the 25th day of July, 1921.

The answer denies the employment, and denies that plaintiff had sustained any injuries whatsoever as alleged.  It further alleges that

the plaintiff was not an employee of defendants at the time of the alleged injury but was merely a trespasser on defendant's property; and that the injuries, if any, were not sustained in the course of relator's employment by the defendants. The case was tried upon the issues thus framed. The trial court submitted the following questions to the jury:

"(1) Was the plaintiff at the time the injury complained of was received an employee of the defendants?

"(2) Was the injury complained of received in the course of employment of the plaintiff by the defendants?"

These questions were decided by the jury in favor of the plaintiff. The trial court thereupon ordered judgment in favor of the plaintiff for the full amount demanded in the complaint, namely, the amount of the award of the Workmen's Compensation Bureau, together with a fifty per cent penalty and interest on said sums. The defendants moved for judgment notwithstanding the verdict or for a new trial. The motion was denied and defendants have appealed from the judgment and from the order denying their motion for judgment notwithstanding the verdict or for a new trial.

The first contention advanced by the appellants is that the evidence is insufficient to sustain the verdict. Specifically, appellants contend that "there is no evidence showing or tending to show that the relator was an employee of the defendants;" and that "there is no evidence showing or tending to show that the injuries complained of were received by the relator in the course of his employment by the defendants."

The evidence shows that the defendants were engaged in the elevator and grain business at Knox, North Dakota, and that in connection with such business they also operated a feed mill. On February 2d, 1920, the relator was employed by the manager of defendants' elevator. The relator had been employed on previous occasions to assist in and about such elevator. The manager had authority to hire whatever assistance was needed in carrying on the business. Relator first loaded a car of grain which was billed out. After this work was completed a customer appeared with a load of grain, which he desired to have ground for feed, and the relator sustained certain injury to his hand while this grain was being ground. There is a square conflict in the evidence as

to whether relator was employed for the sole purpose of loading a certain car of grain, and whether his employment had not fully terminated before the accident occurred. The manager of the defendants' elevator testified specifically that relator was employed for the specific purpose of loading a certain car of grain; that his employment had been fully terminated and that he had nothing, whatever, to do with the operation of the feed mill and that the injuries which he sustained were caused by his curiosity, and as a result of his meddling with machinery with which he had nothing whatever to do. The relator, however, testifies to the contrary. He claims that his employment was not limited to the loading of a car of grain, but was for the purpose of assisting generally in and about the business there being carried on and that the manager of the elevator specifically directed him to operate the feed mill and grind the load of grain which was brought in for that purpose. In these circumstances it cannot be said by this court that the verdict of the jury was without support in the evidence. The credibility of witnesses and the weight of evidence was for the jury.

It is next contended that the trial court erred in instructing the jury that the question of damages is not involved; that if the relator was an employee of the defendants, and the injuries in question sustained in the course of his employment, then the jury must return a verdict in favor of the plaintiff for the amount of the award made by the Workmen's Compensation Bureau, with the fifty per cent penalty added.

The North Dakota Workmen's Compensation Act (Laws 1919, chap. 162) is compulsory, and its provisions operate upon all persons and employments within the act (Bordson v. North Dakota Workmen's Comp. Bureau, 49 N. D. 534, 191 N. W. 841; Fahler v. Minot, 49 N. D. 960, 194 N. W. 695). It substitutes the principle of compensation for that of liability for fault. Fahler v. City of Minot, supra. This principle, that is, the principle of right to compensation on the part of the injured employee, and a corresponding liability on the part of some one to pay such compensation, applies not only on the part of Workmen's Compensation Fund in cases where an employer has paid the premium; but applies also, in cases where the employer has failed to comply with the Compensation Act. In the latter case, the non-complying employer is liable, even without fault, provided the injured

employee would have been entitled to compensation from the Workmen's Compensation Fund if the employer had complied with the Compensation Act. Fahler v. Minot, supra.

It will be noted that § 11, supra, recognizes only two classes of employers (as regards employers who fall within the terms of the Act): (1) Employers who comply with the Compensation Act, and pay premiums into the Workmen's Compensation Fund; and (2) employers who do not comply with the Act.

Section 11, supra, provides that employers who do not comply with the law "shall be liable to their employees for damages suffered by reason of injuries sustained in the course of employment" and that in an action brought by an employee "the defendant shall not avail himself of the following common law defenses:" the fellow-servant rule, assumption of risk or contributory negligence. Said section further provides that "any employee whose employer has failed to comply" with the provisions of the compensation act and who have been injured in the course of employment may, in lieu of proceeding against his employer by civil action in the courts, file his application with the Workmen's Compensation Bureau for compensation in accordance with the terms of the Act. It will be observed that an employee of an employer who has not complied with the law has two remedies and he may elect which one he will pursue.: (1) He may maintain a civil action against his employer and in such action he is entitled to recover whatever damages he is able to show he has sustained (Fahler v. Minot, supra); or (2) he may in lieu of such action apply to the Compensation Bureau for compensation under the act. In the latter event the Bureau is required to proceed in like manner as in other claims before the Bureau. The Bureau must find whether the employer is within the act; whether he had paid premiums to the Compensation Fund; whether the alleged injuries of the claimant were sustained in the course of his employment, and if so, the nature and extent and whether they were wilfully self-inflicted. If it appears that the claimant is one entitled to compensation the amount is fixed in accordance with the provisions of the statute. In other words, the proceeding where the employee asks for compensation is up to this point precisely as if the employer had complied with the law. Where the employer has complied with the law the compensation to the injured employee is payable out of the Workmen's

Compensation Fund; where the employer has not complied with the Compensation Act the award of the Compensation Bureau becomes a personal obligation on the part of the employer, and in the event of his failure, neglect or refusal to pay such compensation to the person entitled thereto, within said period of ten days, the same constitutes "a liquidated claim for damages against such employer in the amount ascertained and fixed by the Bureau, which, with an added penalty of fifty per cent, may be recovered in an action in the name of the state for the benefit of the person or persons entitled to the same."

That portion of § 11 under consideration here is identical in language with a similar provision in the Ohio Workmen's Compensation Act and was doubtless taken from the Ohio law. In considering the effect of this provision the Supreme Court of Ohio (Fassig v. State, 95 Ohio St. 232, 116 N. E. 104, 13 N. C. C. A. 845) said: "The suit for the liquidated or stipulated amount is not a suit as at common law by the employee for damages sustained. The employee has waived the right to bring such a suit by claiming compensation. A suit for damages is one for the recovery of an unliquidated sum in an action at law. The suit by the state for the amount of the compensation under § 27 is not one for negligence of any kind. It has no regard for such a thing. It is simply based on the fact of injury in the course of employment. The recovery in the damage suit is presumed to wholly compensate the injured person, but when he elects to accept compensation it is fixed in accordance with the schedule. The action to recover it is a statutory action, and under the amendment the statute properly fixes the measure of recovery. The action against the employer to recover the amount so ascertained and fixed must be brought in a court of general jurisdiction, and the defendant employer is entitled to a trial by jury. He is entitled to make the defense that he is not an employer of five or more employees, etc.; that the injury to the beneficiary was not received in the course of employment, or that it was wilfully self-inflicted; or he might show that he had paid his premium into the insurance fund. The defense that he would not be entitled to make in the case simply goes to the amount of compensation, for that is fixed pursuant to the statute. If the issues stated are found against him, and he pays the amount fixed by the board, he has only paid what other employers pay who comply with the provisions of the

law, together with the penalty which the law imposes on him for not obeying it. Inasmuch as the amount recovered is not determined by proof of the actual damages sustained, but is such an amount as is fixed by the statute when the administrative board has ascertained the facts to which the statute would apply, there is nothing for the jury to pass upon on that question. It is a sum that is liquidated or stipulated by the statute. . . ."

"There is no denial of trial by jury as to any issue which the employer is entitled to raise.

"It is also claimed that the section under examination infringes on the judicial power of the state in that it confers upon an administrative board judicial functions. The judicial power of the state is vested by Section 1 of article 4 of the Constitution in the courts named in that section, and it is contended that the duties laid upon the industrial commission are judicial in character and call for the exercise of judicial power."

"From what has been already shown it will be seen that the proceedings before the commission, and its order, are merely administrative, and simply lay the foundation for a suit in a court of competent jurisdiction in which the employer has due process and all rights preserved."

The decision of the Ohio Court in Fassig v. State, supra, was rendered more than two years before the provision of the Ohio Workmen's Compensation Act therein construed was adopted and made a part of the Workmen's Compensation Act of this State. Presumptively, the North Dakota Legislature adopted this provision in light of the construction which had been placed thereon by the Ohio Courts. 25 R. C. L. pp. 1069–1071. In other words, it must be presumed that the North Dakota Legislature, in adopting the provision then in force in Ohio, intended to adopt the same policy in this State as regards actions to be brought upon awards of the Compensation Bureau against employers who had not complied with the Compensation Act as then prevailed in Ohio under such provision,—i. e., afford the employer the opportunity of a judicial review of the fundamental and jurisdictional questions upon which liability under the Compensation Act rests; but, that on determination of those questions against the employer, the amount of the verdict should be the sum fixed by the Compensation

51 N. D.—46.

Bureau in accordance with the schedule provided in the Compensation Act.

Appellants further contend that the trial court erred in awarding judgment against them for a fifty per cent penalty. This contention is predicated principally upon the contention that insofar as § 11 of the Compensation Act provides for the imposition of such penalty it is violative of the constitutional guarantees of due process and equal protection of the laws. The question so presented is not free from difficulty. Respondents assert that the question is controlled by the decision of the Ohio court in Fassig v. State, supra. It is true, the Ohio court in the case cited sustained a penalty provision identical in terms with that contained in § 11 of the North Dakota Workmen's Compensation Act. But the decision of the Ohio Court does not absolve this court from the duty of determining the constitutional questions raised in this case, for "the rule that a statute adopted from another state carries the construction given by the courts of that state has no relation to the question of whether or not a statute is constitutional and valid." 25 R. C. L. p. 1075. Furthermore, the Ohio Court does not seem to have considered the question pressed in this case:—that the constitutional rights of the employer are invaded because he is afforded a judicial review of the fundamental and jurisdictional questions which inhere in the award only on the condition that if he is unsuccessful in maintaining his defense he shall pay a penalty equal to fifty per cent of the award; and that the imposition of this penalty is violative of the guarantees of the State and Federal Constitutions.

In passing, it may be noted that the constitution of this state creates the same three co-ordinate departments of government, and makes the same distribution of governmental powers among such departments, as does the Federal Constitution. State ex rel. Linde v. Taylor, 33 N. D. 76, 93, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583. The State Constitution also contains guarantees of due process, and the equal protection of the laws (N. D. Const. §§ 11, 13). It further provides: "All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay." (N. D. Const. § 22). The Federal

Supreme Court has ruled that the legislature may provide penalties for the violation of regulatory measures, and thus promote enforcement thereof. St. Louis, I. M. & S. R. Co. v. Williams, 251 U. S. 63, 64 L. ed. 139, 40 Sup. Ct. Rep. 71. It has, also, ruled that the constitutional guarantees of due process and equal protection of the laws are not violated by a statute which imposes a penalty, not exceeding 25 per cent of the amount of the policy, upon an insurance company, which in bad faith refuses to pay a claim for loss under the policy (Supreme Ruling of F. M. C. v. Snyder, 227 U. S. 497, 57 L. ed. 611, 33 Sup. Ct. Rep. 292); or by a statute which imposes upon foreign insurance companies, as a condition to their doing business in a state, an obligation to pay a certain sum in addition to the amount of the policy in case of default in payment of claims for loss under their policies. Fidelity Mut. Life Asso. v. Mettler, 185 U. S. 308, 46 L. ed. 922, 22 Sup. Ct. Rep. 662. On the other hand, the Federal Supreme Court has said in no uncertain terms that the requirements of due process and of equal protection of the laws are not met where the right of judicial review is granted only on conditions so harsh and oppressive as to be tantamount to a denial of the right so purported to be granted. The question was considered, though not decided, in (Cotting v. Kansas City Stocks Yards Co.) Cotting v. Godard, 183 U. S. 79, 100–102, 46 L. ed. 92, 105, 106, 22 Sup. Ct. Rep. 30. In the opinion in that case, the court made the following statements, which seem quite pertinent here: "Do the laws secure to an individual an equal protection when he is allowed to come into court and make his claim or defense subject to the condition that, upon a failure to make good that claim or defense, the penalty for such failure either appropriates all his property, or subjects him to extravagant and unreasonable loss? Let us make some illustrations to suggest the scope of this thought.

"Suppose a law were passed that if any laboring man should bring or defend an action and fail in his claim or defense, either in whole or in part, he should in the one instance forfeit to the defendant half of the amount of his claim, and in the other be punished by a fine equal to half of the recovery against him, and that such law by its terms applied only to laboring men, would there be the slightest hesitation in holding that the laborer was denied the equal protection of the laws?

The mere fact that the courts are open to hear his claim or defense is not sufficient, if upon him, and upon him alone, there is visited a substantial penalty for a failure to make good his entire claim or defense. Take another illustration: Suppose a statute that every corporation failing to establish its entire claim, or make good its entire defense, should as a penalty therefor forfeit its corporate franchise, and that no penalty for any kind except the matter of costs was attached to like failures of other litigants, could it be said that the corporations received the equal protection of the laws? Take still another illustration: Suppose a law which, while opening the doors of the courts to all litigants, provided that a failure of any plaintiff or defendant to make good his entire claim or entire defense should subject him to a forfeiture of all his property or to some other great penalty; then, even if, as all litigants were treated alike, it could be said that there was equal protection of the laws, would not such burden upon all be adjudged a denial of due process of law? Of course, these are extreme illustrations, and they serve only to illustrate the proposition that a statute (although in terms opening the doors of the courts to a particular litigant) which places upon him as a penalty for a failure to make good his claim or defense a burden so great as to practically intimidate him from asserting that which he believes to be his rights is, when no such penalty is inflicted upon others, tantamount to a denial of the equal protection of the laws."

The question was again considered in Ex parte Young, 209 U. S. 123, 52 L. ed. 714, 13 L.R.A.(N.S.) 932, 28 Sup. Ct. Rep. 441, 14 Ann. Cas. 764. In that case the court held a railroad rate statute, which fixed such extreme and oppressive penalties as to intimidate the railroad company and its officers from resorting to the courts to test the validity of the rates, violative of the 14th Amendment to the Federal Constitution.

The court said: "If the law be such as to make the decision of the legislature or of a commission conclusive as to the sufficiency of the rates, this court has held such a law to be unconstitutional. Chicago, M. & St. P. R. Co. v. Minnesota, 134 U. S. 418, 33 L. ed. 970, 3 Inters. Com. Rep. 209, 19 Sup. Ct. Rep. 462, 702. A law which indirectly accomplishes a like result by imposing such conditions upon the right to appeal for judicial relief as works an abandonment of the

right rather than face the condition upon which it is offered or may be obtained is also unconstitutional. It may therefore be said that when the penalties for disobedience are so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its rights."

The principle announced in the Young Case was re-affirmed, and the decision approved, in Missouri P. R. Co. v. Tucker, 230 U. S. 340, 57 L. ed. 1507, 33 Sup. Ct. Rep. 961. See also St. Louis, I. M. & S. R. Co. v. Wynne, 224 U. S. 354, 56 L. ed. 799, 42 L.R.A.(N.S.) 102, 32 Sup. Ct. Rep. 493; Wadley Southern R. Co. v. Georgia, 235 U. S. 651, 59 L. ed. 405, P.U.R.1915A, 106, 35 Sup. Ct. Rep. 214; State v. Crawford, 74 Wash. 248, 46 L.R.A.(N.S.) 1039, 133 Pac. 590.

In Wadley Southern R. Co. v. Georgia, 235 U. S. 651, 59 L. ed. 405, P.U.R.1915A, 106, 35 Sup. Ct. Rep. 214, the court, after pointing out that methods by which the "right of judicial review are secured vary in different jurisdictions," said:

"But in whatever method enforced, the right to a judicial review must be substantial, adequate, and safely available; but that right is merely nominal and illusory if the party to be affected can appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality rather than to ask for the protection of the law." (235 U. S. 661).

The Workmen's Compensation Bureau is vested with power to administer the Compensation Act, and to that end it is authorized to determine and fix the amount of compensation which an employee, who has suffered injuries in the course of an employment subject to the act, is entitled to receive, and this without regard to whether the employer has complied with the Compensation Act. Section 11, supra. In case the employer has complied with the Act and paid the required premiums, such employer is relieved from liability, and the award made by the Bureau in favor of the injured employee is a charge against, and payable out of, the Workmen's Compensation Fund; where an employer, subject to the act, has failed to comply therewith, he is liable to his employees for all damages they may suffer by reason of

injuries sustained in the course of employment; and, upon the application of an injured employee, the Workmen's Compensation Bureau is empowered to hear and determine his claim for compensation "in like manner as in other claims before the Bureau," and to ascertain and determine the amount of compensation "due to such injured employee, or to his dependents in case death has ensued." But the jurisdiction of the Workmen's Compensation Bureau extends only to cases within the Compensation Act. In other words, the Compensation Bureau has power only to hear and determine claims against employers "subject to the act," and it has no power whatever to hear and determine claims outside of the scope of the act. Borgnis v. Falk Co. 147 Wis. 327, 37 L.R.A.(N.S.) 489, 133 N. W. 209, 3 N. C. C. A. 649; Miller v. Horton, 152 Mass. 540, 10 L.R.A. 116, 23 Am. St. Rep. 850, 26 N. E. 100. Hence, the question whether there exists an employment, and whether such employment is one within the Compensation Act, goes to the very jurisdiction, i. e., the power, of the Compensation Bureau to hear and determine the claim at all.

In considering the powers, and the effect of the decisions, of the board empowered to administer the Workmen's Compensation Act in Wisconsin, the Supreme Court of that State (Borgnis v. Falk Co. 147 Wis. 327, 360, 37 L.R.A.(N.S.) 489, 133 N. W. 209, 3 N. C. C. A. 649) said:—

"The next important contention is that the law is unconstitutional because it vests judicial power in a body which is not a court and is not composed of men elected by the people, in violation of those clauses of the state constitution which vest the judicial power in certain courts and provide for the election of judges by the people, as well as in violation of the constitutional guaranties of due process of law. We do not consider the Industrial Commission a court, nor do we construe the act as vesting in the Commission judicial powers within the meaning of the constitution. It is an administrative body or arm of the government which in the course of its administration of a law is empowered to ascertain some questions of fact and apply the existing law thereto, and in so doing acts quasi-judicially, but is not thereby vested with judicial power in the constitutional sense.

"There are many such administrative bodies or commissions, and with the increasing complexity of modern government they seem likely

'to increase rather than diminish. Examples may be easily thought of,—town boards, boards of health, boards of review, boards of equali-zation, railroad rate commissions, and public utility commissions all come within this class. They perform very important duties in our scheme of government, but they are not legislatures or courts. The legislative branch of the government by statute determines the rights, duties, and liabilities of persons and corporations under certain con-ditions of fact, and varying as the facts and conditions change. Mani-festly the legislature cannot remain in session and pass a new act upon every change of conditions, but it may and does commit to an adminis-trative board the duty of ascertaining when the facts exist which call into activity certain provisions of the law, and when conditions have changed so as to call into activity other provisions. The law is made by the legislature; the facts upon which its operation is dependent are ascertained by the administrative board. While acting within the scope of its duty, or its jurisdiction, as it is sometimes called such a board may lawfully be endowed with very broad powers, and its con-clusions may be given great dignity and force, so that courts may not reverse them unless the proof be clear and satisfactory that they are wrong. Minneapolis, St. P. & S. Ste. M. R. Co. v. Railroad Com-mission, 136 Wis. 146, 17 L.R.A.(N.S.) 821, 116 N. W. 905. Not only this, but many such boards are created whose decisions of fact honestly made within their jurisdiction are not subject to review in any proceeding. State ex rel. Coffey v. Chittenden, 112 Wis. 569, 88 N. W. 587; State ex rel. Vilas v. Wharton, 117 Wis. 558, 94 N. W. 359; State ex rel. Cook v. Houser, 122 Wis. 534, 561, 100 N. W. 964; State ex rel. McManus v. Policemen's Pension Fund, 138 Wis. 133, 20 L.R.A.(N.S.) 1175, 119 N. W. 806. It is important to notice the limitation contained in the last sentence; the decision of such a board may be made conclusive when the board is acting within its juris-diction, not otherwise. Hence, the question of its jurisdiction is one always open to the courts for review; it cannot itself conclusively settle that question and thus endow itself with power. . . ."

"Thus, in the case before us, the jurisdiction of the Industrial Com-mission, to entertain any claim for compensation under the act, rests upon two facts which must exist, viz.: (1) that both employer and em-ployee have elected to come under the act, and (2) that the injury was

received in service growing out of or incidental to the employment as the result of accident, and not of wilful misconduct.

"The Industrial Commission must, of course, decide these questions in any case where they are raised, but it cannot decide them conclusively, for they are jurisdictional questions on which its right to act at all depends. They must be open to review in some court of competent jurisdiction, otherwise the parties would be denied due process of law. The tribunal only has authority over those who have voluntarily elected to give it authority, and if it can decide finally that a man has given consent when he has not it assumes the functions of a court. If the act before us took away from the courts the power to consider these jurisdictional questions, either expressly or by necessary implication, the contention that judicial power had been vested in the Commission, contrary to the command of the constitution, would be of greater force, but we think that the act does not do this, or attempt to do it."

Somewhat similar views were expressed by the Ohio Court in sustaining the Ohio Workmen's Compensation Act against attack on similar constitutional grounds as those urged against the Wisconsin Act. The Ohio Court said: "Of course, if the board is a court there is an end of the whole matter. The statute would be unconstitutional, for if the board is a court it has not been created in accordance with the constitution. We do not consider the board of awards a court, or invested with judicial power within the meaning of the Constitution. It is created by the act purely as an administrative agency to bring into being and administer the insurance fund, etc." State ex rel. Yaple v. Creamer, 85 Ohio St. 349, 400, 39 L.R.A.(N.S.) 694, 97 N. E. 607, 1 N. C. C. A. 30; Fassig v. State, 95 Ohio St. 232, 116 N. E. 107, 13 N. C. C. A. 845. And, as already noted, the Ohio Court also held that in an action against an employer upon an award made under a provision identical in language with § 11, supra, the employer is entitled to urge as a defense that he was not an employer, subject to the act; that the alleged injuries are not within the purview of or subject to the Act; or that he has paid the premiums to the Compensation Fund so as to be relieved from liability under the terms of the Compensation Act. In other words, the Ohio court held that the employer was entitled to a judicial review of all the fundamental and jurisdictional questions in-

volved in the award.  Fassig v. State, supra; Pittsburg Coal Co. v. Industrial Commission, 108 Ohio St. 185, 140 N. E. 684.

It will be noted that the compensation act makes no provision for appeal by an employer against whom an award is made under § 11 of the act.  But such award is made enforceable only by means of a civil action.  And in such action, as has been said above, the employer is entitled to interpose any defense affecting the fundamental or jurisdictional questions involved in the award.  In other words, the lawmakers adopted this method of affording the employer an opportunity of judicial review,—and this is the only method provided.  But while the lawmakers granted the employer the right of judicial review they attached thereto the condition that if he is unsuccessful in his defense he is to be penalized in a sum equal to fifty per cent of the award.  This penalty is not imposed merely upon employers whom the court finds to have been guilty of bad faith in their refusal to pay the award; the penalty is imposed upon all employers who fail to pay the award within ten days after notice thereof.  It is imposed as well upon an employer who contests the claim in the best of faith as upon one who interposes a defense in bad faith.  The statute does not contemplate that an action shall be maintained on the award within the ten day period after notice of the award is given; and if an action were maintainable within that time it is highly improbable that judicial determination could be obtained within such ten day period.  Hence, the result of the statute, as interpreted by the trial court, is that the fifty per cent penalty is automatically imposed upon every employer who is unsuccessful in establishing a defense against the award.

In our opinion the provision as so construed is, in effect, a denial of that right to judicial review to which an employer is entitled under our constitution, and falls within the rule announced by the Federal Supreme Court in Cotting v. Kansas City Stock Yards Co. (Cotting v. Godard) 183 U. S. 79, 100–102, 46 L. ed. 92, 105, 106, 22 Sup. Ct. Rep. 30, and subsequent decisions.  Whether the statute is susceptible of being interpreted so as to mean that the ten day period commences to run only when the obligation of the employer as evidenced by the award has become definitely settled by final judicial determination; or whether the statute is susceptible of being interpreted so as to mean that the penalty is to be applied only in cases where the court finds that there is

no reasonable controversy and the employer guilty of bad faith, we need not determine as neither of those situations exist in this case.    Here there had been no final judicial determination and the record clearly shows that there was a reasonable controversy upon fundamental and jurisdictional questions, and that the defendants interposed their defense in good faith.    It follows from what has been said that the trial court was in error in awarding judgment in favor of the plaintiff for the fifty per cent penalty and the judgment must be modified accordingly.    The allowance of the penalty, however, does not invalidate the judgment nor does the invalidity of the penalty provision affect the validity of the Workmen's Compensation Act as a whole, or even the other provisions of Section 11, as this penalty provision may be stricken from the law without in any manner affecting such other provisions. State ex rel. Hughes v. Milholan, 50 N. D. 184, 195 N. W. 299.    Furthermore, it is specifically provided in the Compensation Act that if any provision of the act is held unconstitutional or invalid that this shall not affect the validity of the act as a whole or any part thereof other than the part so decided to be unconstitutional.    § 26.

The judgment appealed from will therefore be modified by eliminating therefrom the allowance made for the penalty, and as so modified, it is affirmed.

BIRDZELL, JOHNSON, and NUESSLE, JJ., concur.

BRONSON, Ch. J., concurs in result.