IN BANC.
This is an action in mandamus instituted in this court. The cause has been submitted upon demurrer to the answer to the alternative writ. *Page 444 
On February 3, 1931, I.A. Griffin, the relator, suffered an accidental injury arising out of and in the course of his employment. He thereafter filed with the State Industrial Accident Commission a claim for compensation on account of his injury, which claim was allowed. On March 11, 1931, the commission made a final award, which Griffin accepted on March 16 following, by cashing the warrant issued by the commission in full payment of said award. Thereafter, on May 8, 1931, the commission on its own motion entered an order reopening the claim and awarding Griffin compensation for temporary total disability, and continued to pay such compensation until December 15, 1931.
On December 17, 1931, the commission entered a final award, denying compensation subsequent to December 15, 1931. Thereafter Griffin filed an application for a rehearing of the December 17 award, which petition was denied, whereupon he appealed from both the final award and the order denying a rehearing, to the circuit court for Marion county. Upon the failure of the commission to appear, a default was entered against it, and on February 20, 1932, the circuit court entered a judgment in favor of Griffin and against the commission, reading in part as follows:
"It is further ordered and adjudged that the matter be, and it is hereby, remanded to the state industrial accident commission and the said commission is hereby directed and commanded to allow said plaintiff compensation for the full and complete loss and [of] use of his right limb, to-wit: $25.00 per month for a total of sixty-four (64) months, commencing on said 10th day of October, 1931, which said compensation was caused by an injury received by said plaintiff on the 3rd day of February, 1931, while plaintiff was employed as a workman on the Pacific highway in Marion county, Oregon, for the state highway department, and *Page 445 
said commission is hereby ordered, commanded and required to reopen said matter and take said action and such further proceedings as are hereby required as soon as the same can be conveniently done."
Pursuant to the judgment of the circuit court, the commission, on March 23, 1932, entered an order granting Griffin compensation for permanent partial disability for sixty-four months, and thereafter paid to him monthly the sum of $25, from December 15, 1931, the date of the final order, to and including January 31, 1933. During the month of January the commission received information that Griffin had completely recovered from any disability resulting from his accidental injury of February 3, 1931. Thereupon the commission made a complete and thorough investigation of the matter, and, being satisfied that Griffin had fully recovered from his injuries, made an order whereby its award of March 23, 1932, entered pursuant to the judgment of the circuit court, was modified by awarding Griffin compensation for a permanent partial disability for 13 17/30 months from December 15, 1931, and providing that payments should continue only to February 1, 1933. Copies of this order were mailed to Griffin at his last known address as shown by the records of the commission, and to his attorney.
No petition for a rehearing of the order of January 11, 1933, was filed on behalf of Griffin. On April 8, 1933, the petition on which the alternative writ of mandamus involved herein was issued was filed with the clerk of this court. The relator's contention is thus expressed by him:
"It is the contention of the petitioner herein that the order heretofore made by the circuit court of Marion county on the 20th day of February, 1932, is final and conclusive, and not only establishes an award in favor of plaintiff herein, but directs and commands *Page 446 
that said commission pay said award. It is the position of the petitioner that the defendants herein have no discretion in the matter of the compensation due petitioner and that their duties are simply ministerial, setting aside to the petitioner and relator the amount of money necessary to pay said award and to pay to petitioner $25 per month for the full number [64] of months demanded in said order."
The commission, however, takes issue with the relator's contention and asserts that the judgment of the circuit court does not deprive it of continuing jurisdiction over such claims so as to prevent it, in the event of change in the injured workman's condition, from modifying or even terminating the award entered by it pursuant to the judgment of the circuit court.
In order to discuss the question thus raised in this proceeding, it is necessary to review to some extent the provisions of the workmen's compensation law. Under that law the commission is charged with the administration of the provisions of the act: § 49-1807, Oregon Code 1930. Every workman subject to the provisions of the law who sustains a personal injury by accident arising out of and in the course of his employment is entitled to receive the compensation therein provided, from the industrial accident fund: §§ 49-1814, 49-1827.
Subdivision (f) of § 49-1827 provides:
"Permanent partial disability means the loss of either one arm, one hand, one leg, one foot, loss of hearing in one or both ears, loss of one eye, one or more fingers, any dislocation where ligaments are severed, or any other injury known in surgery to be permanent partial disability. Where permanent partial disability shall result from any injury, the workman shall receive the sum of twenty-five dollars ($25) a month for the period stated against such injury, respectively, as follows * * *." *Page 447 
Here follows a schedule showing the number of months for which the injured workman is entitled to receive compensation for certain defined permanent partial disabilities, and in all other cases of injury not specifically described, "resulting in permanent partial disability, the compensation shall bear such relation to the periods stated in this clause as the disabilities bear to those produced by the injuries named in this schedule, and payments shall be made for proportionate periods, not exceeding, however, ninety-six (96) months".
Subdivision (i) of § 49-1827, which is a part of the general section containing the schedule of payments to be made to injured workmen, provides as follows:
"If aggravation, diminution or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case, the commission may, upon the application of the beneficiary, or upon its own motion, readjust for future application the rate of compensation in accordance with the rules in this section provided, or, in a proper case, terminate the payments."
Section 49-1837 requires any workman entitled to compensation, if requested by the commission, to submit himself from time to time for medical examination, and in the event of his refusal to do so the commission is given authority to suspend his monthly payments during the period of such refusal. In the event of his refusal to submit to such medical or surgical treatment as the commission deems reasonably essential to promote his recovery, "his right to compensation shall be suspended, and no payments shall be made for such period", and the commission may reduce the period during which such workman would otherwise be entitled to compensation to such an extent *Page 448 
as it shall determine his disability shall have been increased by such refusal.
Under § 49-1842 the commission is granted "full power and authority to hear and determine all questions within its jurisdiction", and it is required, whenever it has made any order, decision or award pertaining to any claim, to serve the claimant with a copy thereof by mail, "which shall be addressed to the claimant's last known address as shown by the records of the commission". Any claimant who is not satisfied with the action of the commission is required, before appealing to the courts, to file an application for a rehearing. If a rehearing is denied, the applicant is given the right under § 49-1843 to appeal to the circuit court, where "the case thereafter shall proceed as other civil cases in said court; provided, that either party thereto may demand a jury trial upon any question of fact * * *." This last section further provides that "if the court shall determine that the commission has acted within its power and has correctly construed the law and facts, the decision of the commission shall be confirmed; otherwise, it shall be reversed or modified; provided, however, that in case of any trial of fact by a jury the court shall be bound by the decision of the jury as to the question of fact submitted to it. In case of a modification or reversal the circuit court shall refer the same back to the commission with an order directing it to fix the compensation in accordance with the findings made by the court; provided, that any such award shall be in accordance with the schedule of compensation set forth in this act".
Due to the lack of flexibility of our courts and their inability to handle properly, expeditiously and completely the many problems arising from injuries sustained by workmen in many and varied hazardous *Page 449 
occupations, there arose a general demand for a system through which injured workmen would receive immediately proper medical and surgical attention and, without unnecessary delay and expense, compensation for forced absence from work. In an attempt to accomplish the desired results, the workmen's compensation law was enacted, and a commission, with both administrative and quasi-judicial powers, was created to carry out the provisions of the law.
The fundamental purpose and objects sought to be accomplished by the enactment of the workmen's compensation law should not be lost to sight or cast aside in construing its provisions. One of its principal objects is to provide compensation for those who receive injuries in industry for their time lost from work. In order to reduce, as far as possible, such loss of time, the commission can and does provide surgical and medical services, and the law grants to the commission the power to compel the injured workman, if he wishes to receive compensation, to submit to medical examination and treatment. In many cases it is utterly impossible to determine, even with the assistance of expert medical advice, the extent of the injury or the probable duration of the injured workman's disability. To the commission, therefore, is entrusted broad power in dealing with all cases coming before it.
The supreme court of North Dakota, in discussing the provisions of the workmen's compensation law of that state, in Crandall v.North Dakota Workmen's Compensation Bureau, 53 N.D. 636
(207 N.W. 551), said:
"The purpose of that act, according to the express declaration contained therein, was to substitute the remedy therein provided, to the exclusion of all others, *Page 450 
in providing compensation for workmen, who have sustained injuries in the course of an employment subject to the act, in all cases where the employer has complied with the law. In such case the employer is relieved from all personal liability, and the injured employee has no legal claim against him, but is entitled to be compensated according to the terms of the workmen's compensation act, and not otherwise. Whatever compensation is awarded is a charge against and payable out of the workmen's compensation fund. State v. Watland, 51 N.D. 710,201 N.W. 680, 685. The bureau is charged with the duty of collecting premiums, administering and disbursing the compensation fund, under the law. It has a `continuing obligation and a continuing duty, after, as well as before, an award is made.' Gotchy v. N.D. Workmen's Compensation Bureau, supra;
section 18, supra. This continuing duty of the bureau exists even in cases where the bureau has denied the right of the claimant `to participate at all in the workmen's compensation fund' on one of the grounds specified in the statute and its decision has been reversed on appeal; for, while in such case the court has power to determine, not only the right of compensation, but also to fix the compensation within the terms of the act, the judgment becomes conclusive upon the bureau only upon the jurisdictional question of the right of the claimant to participate in the fund at all. And the award made by the court in the judgment is subject to the continuing jurisdiction vested in the compensation bureau, and, in a proper case, `the bureau, after such judgment, may increase or diminish the award, or may award a lump sum.' Gotchy v. N.D. Workmen's Compensation Bureau,supra. See, also, Roma v. Industrial Com., 119 N.E. 461,97 Ohio St. 247; Industrial Com. v. Davidson, 126 N.E. 876,101 Ohio St. 71."
In referring to the broad and comprehensive jurisdiction conferred upon the industrial commission of Oklahoma to alter and modify its awards from time to time, the supreme court of that state in Choctaw Portland *Page 451 Cement Co. v. Lamb, 79 Okla. 109 (189 P. 750), remarked:
"It is a well-known fact that the nature and probable effect of an injury, in many cases, can not immediately be determined by the most proficient physicians or surgeons, and we are confident that the legislature had this fact in mind when it provided in section 14, art. 4, for subsequent physical examination, and conferred jurisdiction on the commission to modify or change its former findings or orders. The provision thus serves as a protection both to the employer and employee, and enables the commission to change its findings and orders to effectuate justice, where the amount previously awarded was either too large or too small, or where the commission had previously erred in fixing the compensation through mistake, or because of fraud practiced upon it. The facts of this case prove the wisdom of the provision. When the first order was made, the extent of claimant's injury was not determinable by the commission; when the second order was made, the claimant's hand had been amputated, and it appeared to the commission that the extent of his injury was the loss of his hand; but when the last order was made, it appeared to the commission, from the evidence, that the claimant was more seriously injured, and that he had lost the use of his arm."
The Oklahoma commission in passing upon a claim does not have jurisdiction to predicate what may be the outcome of a certain injury. As was said in Gardner Petroleum Co. et al. v. Poe, Okla. Sup., 26 P.2d 743:
"Under this testimony the commission was justified in finding on August 9, 1925, that the temporary total disability had ceased, but it had no authority to speculate by attempting to find permanent partial or permanent total disability might not thereafter result by reason of the original injury."
In Globe Indemnity Co. v. Lankford, 35 Ga. App. 599
(134 S.E. 357), the court, in passing upon a settlement *Page 452 
effected between the employer and the employee and approved by the commission, observed:
"The commission, of course, had the authority to approve the settlement. But if it sought to adjudicate against a change in condition or to determine that such and such a change would or would not take place, it exceeded its powers, because under section 45 the employee is entitled under certain conditions (see U.S. Casualty Co. v. Smith, 162 Ga. 130 (133 S.E. 851; Gravitt v. Ga. Casualty Co., supra), to a review of any award or settlement upon a change of condition. If it should appear that, since the settlement or award the claimant has undergone a change of condition, due to his injury, for which he should be compensated as by weekly payments for a longer period or in a greater amount then was contemplated and represented in the lump sum received, the settlement would not be conclusive, even though it be solemnly approved by an order of the industrial commission. It is not binding, and no action of the commission can make it so. * * * But, if it should subsequently develop that the `probable future payments' should be extended for a longer time or increased to a larger amount than the commission estimated at the time of the settlement, its judgment, based on probability, will be subject to review and to be superseded by a new award,based on the actual facts, increasing the compensation previously awarded or agreed upon."
This court in Chebot v. State Industrial Accident Commission,106 Or. 660 (212 P. 792), after quoting from § 6632, subdivision (e), and § 6626, subdivision (i), Or. L. (now § 49-1836, subdivision (c), and § 49-1827, subdivision (i), Oregon Code 1930), states that those sections are common to the compensation acts of all states except perhaps two. After referring to other provisions of the act, in discussing the continuing jurisdiction of the commission, the opinion there states:
"The statute gives the commission general jurisdiction over the industrial accident fund and over *Page 453 
the employers and employees contributing thereto, and special jurisdiction over the particular case of an injured workman when such workman filed with the commission his application for compensation. By force of the statute, the jurisdiction thus acquired continues as long as that workman suffers disability, the proximate cause of which reasonably may be traced to the injury for which claim for compensation was originally made and compensation awarded thereon: Bethlehem Ship Building Corp. v. Industrial Accident Commission, 181 Cal. 500 (185 P. 179, 7 A.L.R. 1180). * * *
"It was the manifest purpose of the act that the compensation to which an injured workman is entitled should be adjusted from time to time as his disability as the result of injury arising out of, and in the course of his employment, should increase or diminish; to that end, it is provided in the act that the commission shall have power to require a workman entitled to compensation under the act to submit himself to medical examination from time to time, upon penalty of suspension of monthly payments in case of refusal: Section 6633, Or. L."
See also in this connection: American Mut. Liability Ins. Co.v. Hampton, 33 Ga. App. 476 (127 S.E. 155); Pye v. SouthwesternGas Electric Co., 147 La. 537 (85 So. 232); Sizza v. W.H.Compton Shear Company, 10 N.J. Misc. 1168 (163 A. 143);Rothschild Co. v. Marshall, 56 F.2d 415; Western Pipe Steel Co. v. Industrial Accident Commission, 126 Cal.App. 225
(14 P.2d 530); Korobchuk's Case, 280 Mass. 412
(183 N.E. 67).
Does the fact that the injured workman has appealed to the circuit court and there recovered judgment against the commission deprive the commission thereafter of jurisdiction to adjust, from time to time, his monthly compensation, based on changes in his condition? The relator contends that such a judgment is final and conclusive on all the parties to the litigation *Page 454 
and that a finding by the jury that the workman's injuries are permanent can not be disturbed by the commission, regardless of what may be the development in the future relative to his condition.
Section 49-1827, subdivision (i), hereinbefore quoted, does not limit the right of the commission to readjust or to terminate the workman's compensation to those cases which have not been appealed to the circuit court; nor does that section or any other section of the act confer jurisdiction upon the circuit court to exercise a continuing jurisdiction over the injured workman after his claim has been adjudicated.
Following the relator's argument to its logical conclusion, the injured workman who appealed and recovered judgment for temporary total or temporary partial disability, would not thereafter be entitled to further compensation, if it later developed that permanent total disability resulted from the injury which he had received. In such a case, if the foregoing conclusion is sound, the workman who was so unfortunate as to be denied any relief by the commission at first, and was forced to go to court to establish his right to compensation, would be further discriminated against because he and his witnesses were unable to establish, to the satisfaction of the jury, that his injury would result in his permanent total disability. In the case at bar, if the injury suffered by the relator did not result in "the full and complete loss of the use of his right limb", why should he be entitled to compensation based upon such a loss?
The state industrial accident fund, provided by employers and employees to compensate workmen for injuries sustained and for time thereby lost, as well as to care for dependents of workmen whose injuries result fatally, should be guarded and protected as a *Page 455 
sacred trust fund by those on whom the law imposes the duty to see that it is properly and equitably administered. The law fixes a schedule of compensation for certain injuries, while compensation for other injuries must be approximated. If, for example, the workman's injury necessitates the amputation of a leg, there can be no question concerning the compensation he is to receive. A difficulty arises, however, when an injured leg is not amputated and there can be no definite assurance as to whether the loss of its use is temporary or permanent. Time and treatment alone can indicate the extent of such loss of use of the injured member. If the injured workman, in such a case, were to be awarded compensation for permanent loss of the use of his leg, which would prove to be temporary only, he would be receiving more than the law contemplated; and the trust fund, created for the benefit of all injured workmen, would accordingly be depleted. The injured workman, on the other hand, should not be penalized because the commission had, by some mistake, denied his claim, thereby necessitating an appeal by him.
Construing the workman's compensation act in its entirety, it is apparent that the legislature in passing it, and the electorate in approving it, did not intend to deprive the commission of the right to readjust or terminate compensation to the injured workman when his condition had changed, subsequent to the commission's award or the judgment of the court.
In the case of Dahl v. Workmen's Compensation Bureau, (N.D.)248 N.W. 273, a mandamus proceeding was brought by a workman against the workmen's compensation bureau of North Dakota to require it to pay him a bi-weekly compensation of $40 in accordance with the judgment recovered by him against the bureau. *Page 456 
After he had recovered judgment against the bureau, that board made an award in accordance therewith and authorized the payment as it became due, of the bi-weekly stipend specified. About six months after entering said order, the bureau entered another order vacating its award based upon the judgment of the court and refused to make further payments, due to the fact that the workman had, through an operation, been cured of his disability. In passing upon this matter, the court said:
"Appellant contends that, under section 396a18, it has a continuing jurisdiction and may end, diminish, or increase the compensation previously awarded, or, if compensation has been refused or discontinued, award compensation.
"We are of the opinion that the appellant is right in its contention. The intent of the law is to insure to workmen sure and certain relief when injured in the course of employment and for resulting disability while the disability lasts. If the disability is removed, as in the instant case, the weekly payments should cease, for it is not the intent of the law to pay well men out of the fund created to take care of injured workmen while they are under disability. It is conceded that the operation was successful and that the claimant was no longer under disability when the bureau ceased to make the weekly payments.
"The judgment of the court, in the instant case, does not take from the bureau its continuing jurisdiction over the plaintiff and the award made by the court. When the judgment is entered and acted on by the bureau, it becomes the award of the bureau, the same as any other award. It is administered by the bureau and it has exclusive jurisdiction over it. Under the continuing jurisdiction it may review the award at any time and may end, diminish, or increase the compensation previously awarded. It is the intent of the law that the bureau should end the award, in case the claimant gets well, or the bureau may diminish it in case the claimant is getting better, or may increase it if he gets worse." *Page 457 
The opinion then refers to and quotes from an earlier decision of the same court, as follows:
"`If the judgment of the court upon the amount of an award is the final and ultimate judgment, then, whenever an appeal is taken, this continuing duty and obligation of the bureau, concerning that claim and the award thereupon, is to that extent abrogated. If the award in such case by the court is a lump sum, then the express power of discretion to so do is transferred from the bureau to the court, and the discretion of the bureau, as well as its continuing obligation and duty is thereafter abrogated. If every judgment of the court upon the amount of an award is thus final and ultimate, the court must reserve unto itself a portion of this discretion and power granted to the bureau for the determination of the conditional factors, as they come into existence, and of increasing or decreasing the award, or must deny and abrogate this discretion intended by the act to be exercised by the bureau. To make such constructions and interpretations of the act would not be consonant with the underlying purposes of the act, and the continuing obligations, duties, powers and discretions conferred, and intended to be conferred, upon the bureau'."
See, also, in this connection: Rothschild Co. v. Marshall, supra; Korobchuk's Case, supra; Cobine v. IndustrialCommission, 350 Ill. 384 (183 N.E. 220); Crandall v. Workmen'sCompensation Bureau, supra.
The relator cites and relies upon State ex rel. Gavalek v.Industrial Commission, 100 Ohio St. 399 (126 N.E. 317). In that case the injured workman recovered judgment for a lump sum against the industrial commission, from which judgment the commission did not appeal. Upon the refusal of the commission to pay the judgment, a mandamus proceeding was brought to enforce payment. In its answer therein the commission contended that it had the right to inquire into and determine what the injured workman was entitled to *Page 458 
receive as compensation, regardless of the judgment of the court. In passing upon this question, the court, after referring to the fact that the judgment stood unreversed, said:
"Had the original controversy between the relator and respondent reached this court in due course, it would have been modified as the Roma judgment was modified, and the industrial commission might have been able to exercise the continuing jurisdiction conferred by section 1465-86, Page A. Gen. Code Supp."
It is apparent, from what the court above said, that it did not intend to hold that compensation to the injured workman, payable in future monthly instalments, was not subject to be terminated upon a change of his condition, even in those cases in which the workman's right to compensation had been adjudicated in court.
The relator also cites and relies upon the following cases:State ex rel. Meaney v. State Industrial Accident Commission,115 Or. 484 (237 P. 680); Coursey v. Industrial Commission,82 Colo. 311 (259 P. 514); State ex rel. Thompson v. IndustrialCommission, 121 Ohio St. 17 (166 N.E. 806); State ex rel. Brownv. Nevada Industrial Commission, 40 Nev. 220 (161 P. 516);Woodcock v. Board of Education, 55 Utah 458 (187 P. 181, 10 A.L.R. 181); State ex rel. Nagy v. Industrial Commission,41 Ohio App. 549 (180 N.E. 204).
In none of these cases was involved the question of the right of the commission to terminate periodic payments of compensation to the injured workman, due to a change in his condition after the entry of judgment. The principle involved in most of these cases had to do with the right to maintain mandamus proceedings against the commission for failure to carry out either an award made by it or the judgment of a court. We do not consider these cases as bearing upon the question *Page 459 
now before us, and we therefore refrain from discussing them further.
The defendants, members of the state industrial commission, have advanced several other reasons why the writ should be dismissed, but the disposal which we have made of the cause renders a consideration of them unnecessary.
The demurrer to the answer to the alternative writ is overruled, the petition for a peremptory writ is denied and the petition is dismissed.
BELT, J., took no part in the consideration of this opinion.
KELLY, J., not sitting. *Page 460