## INTER-STATE TELEPHONE AND TELEGRAPH COMPANY v. PUBLIC SERVICE ELECTRIC COMPANY.

Argued February 17, 1914—Decided June 2, 1914.

Where an employe was injured prior to the act of 1913 (chapter 179) through the negligence of one not his employer, under such circumstances as to entitle him to compensation from his employer under the act of 1911, the employer could not recover of the tortfeasor for the compensation paid to the employe under the statute; the statutory compensation is a part of the compensation of the employe for services rendered for which the employer receives a *quid pro quo*. The loss to the employer is the value of the services of the employe to him, not the necessary expense of securing them.

On motion for determination before trial under rule 70.

Before Justices SWAYZE and BERGEN.

For the plaintiff, *Joseph L. Bodine* (*William G. Wright,* of Philadelphia, on the brief).

For the defendant, *Leonard J. Tynan.*

The opinion of the court was delivered by

SWAYZE, J. The case made by the complaint is that an employe of the plaintiff was injured through the negligence of the defendant under such circumstances that he would be entitled to compensation under the act of 1911. The complaint avers that the plaintiff has lost his services, and has, in addition, been obliged to spend money for medical and

hospital services, and has been obliged by the statute to pay him fifty per cent. of his weekly wages, and will be obliged to pay that amount for four hundred weeks. The statute is set forth and it is then averred that the plaintiff and its employe agreed and contracted to accept the provisions of section 2, and the elective schedule of compensation therein contained. The injury happened in 1912, and the act of 1913 (chapter 179) does not apply. The motion raises the question of the right of an employer to recover of a tort-feasor moneys agreed to be paid to an employe.

The case is one of first impression. We are referred to no authority precisely in point and we have found none. The fact that the legislature in 1913 made special provision for such a case is evidence that in the contemplation of that body the right did not exist under the act of 1911, but it is not conclusive since the act of 1913 might be said to limit a pre-existing right of recovery of the employer under the principles of the common law, instead of giving him a new right. We must deal with the question therefore upon principle.

The case resembles *Dale* v. *Grant*, 34 *N. J. L.* 142. In that case it was held that a party who, by contract, is entitled to all the articles to be manufactured by an incorporated company, cannot maintain an action against a wrong-doer who, by a trespass, stops the machinery of the company and prevents it from furnishing manufactured goods to as great an extent as it otherwise would have done. Dale *v.* Grant, however, is not controlling, since the right of an employer to recover for loss of services of his employe is well settled and is not questioned by the present defendant. This case involves the novel question whether the employer is entitled also to recover a sum which he has contracted to pay his employe. The obligation under the act of 1911 is purely voluntary; neither employer nor employe is obliged to accept the provisions of section 2, and either may terminate the contract by sixty days' notice, in writing. The use of the words "agreement" and "contract" in the statute, and the provision that every contract of hiring shall be presumed to have been made with reference to the provision of section 2, suffice to show that the

28   NEW JERSEY SUPREME COURT.

Inter-State Tel. Co. v. Pub. Serv. Elec. Co.   *86 N. J. L.*

legislature meant the relation to be contractual. We cannot distinguish in legal effect this compensation agreed to be paid to the employe from the ordinary compensation called wages. Whether the ultimate effect may be that the statutory compensation comes out of the pocket of the employer as an actual increase of compensation to the employe, or whether it comes out of the pocket of the consumer of the product by way of increased price, or whether it comes out of the pocket of the employe by way of a reduction of or failure to increase his regular wages, can make no difference in legal effect. One of our leading economists says: "Direct and immediate reduction of wages are highly improbable. Here, as in other similar situations, there is likely to be enough slack in the adjustment of wages and profit to enable some tightening, some drain on profits, without any immediate effect on wages. But when such a system is in steady operation, and has been for some time in operation, every employer knows that the. act of employment involves not only wages but these additional charges also. His calculations must be correspondingly affected. The outcome is likely to be that the insurance charge will ultimately come out of the workmen's own earnings. This will take place, not necessarily by any process of direct reduction in wages, but more probably in progressive countries like Germany and England, by a failure of wages to advance as much as they would otherwise do." 2 *Taus. Prin. Ec.* 327.

Whether the economists are right or not in their view of the final incidence of the cost of the statutory compensation, it is certain that the intent of the act was to secure compensation to workmen for the perils of their employment, the risk of which it had been previously thought they assumed as a part of the contract of employment, for which they were supposed rightly or wrongly to be compensated in their wages. In any event the right to the statutory compensation is a part of the compensation of the employe for services rendered, for which the employer receives a *quid pro quo*. If it were not so, the employer would cease to employ. The compensation

is no more a loss to him than other wages paid for work done, and it is none the less compensation for labor done because the statute directs that its payment shall be distributed over a certain number of weeks in the future. It is one of the necessary expenses of the business against which the employer must protect himself by a higher price for his product or lower regular wages for his employes.

The legal right of an employer to recover damages for the loss of services of employes due to a tortious act of a third person has never included the wages paid his servants for past work or the wages he might pay for future work. What the employer loses is the value of the services to him; what the present plaintiff seeks to recover is the value of the services to the employe. The employer loses what he might have made over and above the cost of the employe's services; he does not in any proper sense lose the necessary expense of securing that labor.

The motion is granted, with costs.