[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 583 
This is an action to enforce an award of the *Page 585 
workmen's compensation bureau in favor of the relator and against the defendant in the sum of $4,766.91. The complaint alleges that the defendant is engaged in the business of selling gasoline and other petroleum products in North Dakota and maintains a place for the conduct of such business at the city of Beach in this state; that on May 3, 1923, one William J. Woods, was and for some time prior thereto had been in the employ of the defendant company for the purpose of conducting its business in the city of Beach; that such employment was a hazardous occupation under the Workmen's Compensation Law of this state; that on said May 3, 1923, the said Woods, while so employed and while performing the regular duties incident to, and in the course of such employment, was instantly killed when the truck which he was driving was struck by a Northern Pacific train at the railroad crossing near Beach; that at said time the defendant had not complied with the provisions of the Workmen's Compensation Act of the state of North Dakota in that it had not contributed any premium whatsoever to the workmen's compensation fund; that the relator is the widow of the said Wm. J. Woods, and was at the time of his death living with and dependent upon him for support; that said Woods was also survived by a dependent child; that on June 30, 1923, the relator filed with the workmen's compensation bureau a claim for compensation for the death of her husband, then notifying the bureau that she elected to submit her claim against the employer for such death for determination by the bureau; that on September 23, 1927, a hearing was had before the bureau upon such claim and that the relator and the defendant were present at and participated in such hearing; that on November 4, 1927, the workmen's compensation bureau made an award in the favor of the relator and against the defendant wherein and whereby the defendant was ordered to pay to the relator the sum of $4,766.91; that due notice of said award was given to defendant on the same day, but that defendant has failed and neglected to pay the relator such award or any part thereof although more than thirty days have elapsed since defendant was given notice of the making of the award. The answer admits that defendant was engaged in business as alleged in the complaint; that it had not complied with the provisions of the Workmen's Compensation Act; that the relator is the widow of Wm. J. Woods; that a hearing was had before the workmen's *Page 586 
compensation bureau at the time alleged in the complaint and that the parties were present and participated in such hearing; that the bureau made the award; that the defendant was notified thereof and that it has failed to comply therewith as alleged in the complaint. The defendant further admits that Woods was killed in a collision between a truck he was driving and a Northern Pacific railroad train; but it denies that at that time he was an employee of the defendant and that his death occurred in the course of any employment by the defendant. The answer further alleges that the relator, on June 30th, 1923, filed an application with the workmen's compensation bureau for payment out of the North Dakota workmen's compensation fund; that said claim was denied and dismissed by an order entered by the bureau on August 14, 1923, and that no appeal was taken from such order. In the answer it is further alleged that no action was commenced by the relator or any person in her behalf against the defendant on account of the death of her husband within two years of May 3, 1923, or at any time until the commencement of the instant case on or about December 20, 1927; that no application for an award against the defendant as a noninsured employer was ever filed with the workmen's compensation bureau by the relator or by any person in her behalf or by any other dependent of said Woods or in behalf of such dependent within one year after May 3, 1923, or at any other time; that by virtue of the foregoing facts the workmen's compensation bureau was without authority or jurisdiction to make the award set forth in the complaint, and that said award is illegal and void. It is further alleged that the action is barred by the statute of limitations, to wit: Sec. 7377, Comp. Laws 1913, for failure to institute the same within two years after the accrual thereof. The answer further alleges that the relator on January 8, 1924, accepted from the Northern Pacific Railway Company, $1,000, in full settlement of all damages arising on account of the death of her husband, and that upon such acceptance she executed and delivered to the said railway company an instrument releasing and discharging the railway company, its successors and assigns of and from any and all causes of action, claims or demands, in any manner arising or to grow out of the injuries and death of said Wm. J. Woods; and that on account of the acceptance of said sum in settlement of such damages the award made by the compensation bureau is null and void. *Page 587 
The case was tried to the court without a jury upon the issues thus framed. The trial court held that the acceptance by the relator of $1,000 from the Northern Pacific Railway Company estops her from recovering from the defendant, Hughes Oil Company, on account of the death of her husband and that, consequently, the award made by the compensation bureau was illegal and nonenforceable. The plaintiff has appealed from the judgment.
The questions presented for determination on this appeal arise out of the following contentions of the defendant:
1. That the Workmen's Compensation Act requires any person who elects to present a claim against a noninsured employer for determination and allowance by the workmen's compensation bureau, to present such claim within one year after the injury or death; and that inasmuch as the claim in this case was not presented within such time, the workmen's compensation bureau was without authority to conduct any hearing or make any award.
2. That under § 7377, Comp. Laws 1913, any right of action at law in favor of the relator and against the defendant because of the death of the relator's husband became and was barred upon the expiration of two years after the death; that, consequently, the right to present the claim to the workmen's compensation bureau for determination in any event became barred at the expiration of such two year period; that the claim involved here was not presented for determination within such time and, hence, became and was barred and that the workmen's compensation bureau was without authority to conduct any hearing or make any award with respect thereto.
3. That at the time of his death the relator's husband, William J. Woods, was not an employee of the defendant, Hughes Oil Company, within the meaning of the Workmen's Compensation Act.
4. That the relator, by entering into an agreement with the Northern Pacific Railway Company for a settlement of her claim against that company on account of the death of her husband, became and is estopped from seeking any compensation from the defendant under the provisions of the Workmen's Compensation Act or otherwise.
These contentions will be considered in the order stated.
(1) The record shows that the relator, on June 30, 1923, filed a claim with the workmen's compensation bureau asking that she be *Page 588 
allowed compensation out of the workmen's compensation fund; that this claim was dismissed and denied without prejudice by an order entered by the workmen's compensation bureau on August 14, 1923, for the reason "that the death of said William J. Woods occurred at a time when his employer, the Hughes Oil Company, was not insured" under the workmen's compensation fund. The order of dismissal was accompanied by a letter wherein it was stated that the claimant had a right of appeal to the district court. Such letter also contained a suggestion that if she desired to pursue her remedy against the employer on account of the employer's failure to procure insurance, she might either present the claim to the bureau or bring action. On May 5, 1927, the relator filed what is denominated a "petition for hearing," verified by herself, wherein she alleges that it was her intention and purpose in filing the original application for compensation to have the workmen's compensation bureau make an award against the defendant, Hughes Oil Company, in accordance with the terms of the Workmen's Compensation Act; that when she received the order of dismissal entered by the bureau she assumed that this application had been determined against her, that she had no further remedy through the bureau and that her only remedy would be by action in the courts; that accordingly she made no further application before the bureau; that the original claim filed by her contained all information required by the bureau to enable it to make an award against the defendant as a noninsured employer and she asked that the matter be reopened and a hearing had upon the application. The compensation bureau thereupon issued a notice setting the matter for hearing on July 14, 1927. The notice was served and the matter eventually came on to be heard September 3, 1927, at which time both the relator and the defendant appeared by counsel and witnesses.
The defendant filed a motion to dismiss relator's application upon the grounds that she had failed to file her claim or seek award against the defendant within the time fixed by the Compensation Act or the rules and regulations of the compensation bureau; that relator's petition showed upon its face that it was an attempt to file a claim with the bureau which had become and was barred by the statutes of limitations; that the original claim was one for allowance of compensation out of the compensation fund and that said claim had been dismissed *Page 589 
and no appeal taken. The motion to dismiss was denied and a hearing had. Witnesses were called by both parties, their testimony taken and reduced to writing. After full hearing and consideration the workmen's compensation bureau made its award as already stated. As a basis for the award the bureau found that William J. Woods was killed May 3, 1923 while in the employ of the defendant Hughes Oil Company; that he was engaged in a hazardous occupation; that the injury from which he died was not purposely self-inflicted; that the death occurred while Woods was performing services which he had been employed by the defendant to perform and that the injury occasioning the death was sustained by Woods in the course of his employment; that the defendant had not complied with the Workmen's Compensation Act by payment of premiums or otherwise. The bureau also made other findings relating to the average weekly wage of Woods; the relationship of the relator and her dependency upon him for support, etc.
The Workmen's Compensation Act (Laws 1919, chap. 162), so far as pertinent here, provides:
"Sec. 6. Every employer subject to this act shall contribute to the North Dakota workmen's compensation fund in proportion to the annual expenditure of money by such employer for the service of persons subject to the act, the amount of such payments and the method of making the same to be determined as hereinafter provided.
"An employer securing the payment of compensation by contributing premiums to the workmen's compensation fund shall thereby be relieved from all liability for personal injuries or death sustained by his employees and the persons entitled to compensation under this act shall have recourse therefor only to the North Dakota workmen's compensation fund and not to the employer."
Sec. 7. (This section provides for the classification of risks, the fixing of premium rates, the collection of premiums, etc.)
"Sec. 9. Employers who comply with the provisions of sections six and seven shall not be liable to respond in damages at common law or by statute for injury or death of any employee, wherever occurring, during the period covered by such premiums so paid into the North Dakota workmen's fund, provided that this section shall not *Page 590 
apply to minors employed in violation of the law, in which case both remedies shall be applicable."
"Sec. 11. . . . Any employee whose employer has failed to comply with the provisions of sections six and seven hereof, who has been injured in the course of his employment, wheresoever such injury has occurred, or his dependents in case death has ensued, may, in lieu of proceedings against his employers by civil action in the court, file his application with the workmen's compensation bureau for compensation in accordance with the terms of this act, and the bureau shall hear and determine such application for compensation in like manner as in other claims before the bureau; and the amount of the compensation which said bureau may ascertain and determine to be due to such injured employee, or to his dependents in case death has ensued, shall be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed and determined by the bureau; and in the event of the failure, neglect or refusal of the employer to pay such compensation to the person entitled thereto, within said period of ten days, the same shall constitute a liquidated claim for damages against such employer in the amount so ascertained and fixed by the bureau, which with an added penalty of fifty per cent, may be recovered in an action in the name of the state for the benefit of the person or persons entitled to the same."
"Sec. 15. No compensation under this act shall be allowed to any person, except as provided in section eighteen unless he or some one on his behalf shall, within the time specified in this section make a written claim therefor. . . . All original claims for compensation for disability or death shall be made within sixty days after injury or death. For any reasonable cause shown the bureau may allow original claims for compensation for disability or death to be made at any time within one year."
"Sec. 18. If the original claim for compensation has been made within the time specified in section fifteen, the bureau may, at any time, on its own motion or on application, review the award, and, in accordance with the facts found on such review, may end, diminish, or increase the compensation previously awarded, or, if compensation has been refused or discontinued, award compensation."
It is the contention of the defendant that under § 15, supra, a party *Page 591 
claiming compensation either out of the workmen's compensation fund or an award against a noninsuring employer under § 11 of the act must file his claim not later than one year after the injury which occasioned the disability or the death for which compensation is sought; and it is claimed that inasmuch as the original claim in this case was one for compensation out of the workmen's compensation fund, the workmen's compensation bureau could not, after the expiration of the time in which the claimant might file a claim against the defendant for an award under § 11 of the act, under the guise of reopening the claim, transform a proceeding to recover from the compensation fund to one for an award against a noninsured employer.
This contention is predicated upon the erroneous premise that §§ 15 and 18 apply to claims against a noninsured employer. These sections have no application whatever to such claims; they apply only to claims for compensation out of the workmen's compensation fund. Nyland v. Northern Packing Co. 56 N.D. 624, 218 N.W. 869. By the express provisions of § 11, supra, an injured employee, or a dependent of an injured employee whose death has ensued, is afforded one of two remedies: (1) He may maintain a civil action against the employer for the damages suffered (Olson v. Hemsley,48 N.D. 779, 187 N.W. 147); or (2) he may apply to the workmen's compensation bureau for an award against the employer (State ex rel. Dushek v. Watland, 51 N.D. 710, 39 A.L.R. 1169,201 N.W. 680). According to the plain import of the statute, these two remedies are coexistent and continue for an equal length of time, that is, they both continue until the right of action at law is barred by the statute of limitations.
(2) Defendant's next contention is that the relator's cause of action became and was barred by § 7377, Comp. Laws 1913, before she presented her claim to the workmen's compensation bureau for determination and allowance against the defendant; and, that, hence, the bureau was without power to make an award. Section 7377, supra, provides that, "an action for injuries done to the person of another, when death ensues from such injuries" must be commenced within two years after "the time of the death of the party injured." In our opinion this section has no application to the relator's cause of action against the defendant oil company. This is not an action to recover against the defendant for injuries done to and resulting in the death of her husband. *Page 592 
If any such cause of action existed it was against the railway company and the persons operating its trains. The cause of action against the defendant exists solely by virtue of the provisions of the Workmen's Compensation Act, which impose on every employer, who has failed to comply with the act, liability for injuries to an employee in all cases where in event the employer had complied with the act the person injured (or in case of his death his dependent) would have been entitled to compensation out of the workmen's compensation fund. State ex rel. Dushek v. Watland, supra. The right of action of the plaintiff here is predicated upon an obligation or liability created by the statute; and as regards limitations of time for commencement of suit is controlled by § 7375, Comp. Laws 1913, which fixes a six year period of limitations.
At the time the relator presented her petition to the workmen's compensation bureau in May, 1927, and at the time the bureau heard her application and made an award against the defendant she had a choice of remedies: she might either file such claim, or institute an action against the defendant. She elected to present her claim to the bureau and asked for an award under the Workmen's Compensation Act. This she had an unquestioned right to do and the bureau not only had the power, but it was its unquestioned duty to hear the claim and make such determination thereof as the facts warranted.
(3) It is next contended that the relator's husband was not an employee of the defendant company at the time of his death; but that he was either an employee of the Texaco Company or an independent contractor.
A careful consideration of all the evidence leads us to the conclusion that at the time of his death William J. Woods was an employee of the defendant company, and that the injury which caused his death was sustained in the course of such employment.
The evidence shows that Woods had been working for the defendant company for a number of years prior to January, 1923; and that he had been receiving as compensation for such services a monthly salary of $100 and in addition thereto certain commissions on sales of lubricating oil. In January, 1923, the defendant company entered into an arrangement with the Texaco Company. The manager of the defendant *Page 593 
company testified as follows regarding the nature and terms of such agreement:
We were to handle these products for them (the Texaco Company) on a commission basis. We furnished the equipment and buildings — we didn't sell them any of that but we did sell our stock effective within the first few days of January.
Q. And you were operating under that system when Mr. Woods met with his death?
A. Yes. . . .
Q. Will you explain just exactly the nature of the relationship between your company, the Texaco Company and Mr. Woods?
A. The Texaco Company has taken over the stock. They exercise complete jurisdiction over those stocks and we act as their agent. We in turn handle the business at these points and we arrange with men like Mr. Woods to act as our agent on a commission basis. . . .
Q. What was the connection between the Texaco Company and your company?
A. At the end of each month they figured it up on a percentage basis and sent us a check for it at the rates agreed upon.
Q. And what did you in turn do?
A. We paid the stipulated amount to the agents, the various overhead expenses, etc.
Q. What would your agents, such as Mr. Woods, be required to pay out of the commission they received?
A. The expenses of the country deliveries and little incidental expenses such as stamps for reports, etc.
At or about the same time, to wit, in January, 1923, the defendant company made an arrangement with Woods and the other persons employed by it to operate its oil stations, somewhat different from that which had formerly existed. Under the new arrangement such persons were to be paid commissions on all the goods sold instead of a salary and commissions on lubricating oil as under the former arrangement. So far as the evidence shows, however, this was the only material change made. The work to be performed by those in charge of the oil stations, — both retail and bulk, — remained precisely the same as *Page 594 
before, and the defendant's control over William J. Woods and other persons similarly employed remained exactly the same as when such persons were employed on a salary basis. While they were required to furnish a bond to the Texaco Company and make reports to that company, this arrangement was in turn bottomed upon the contract of employment between such employees and the defendant. It was because of their agreement with the Hughes Oil Company that such persons had any dealings whatsoever with the Texaco Company. The Hughes Oil Company hired and fired; it alone had the right to terminate the employment.
The Hughes Oil Company maintained what is commonly known as a "filling" station at Beach, North Dakota. It also maintained there what is commonly known as a "bulk" station. William J. Woods was in charge of both. The Hughes Oil Company paid all the expenses incident to operating the station, such as taxes, water-rent, etc.; it furnished the stationery and sales slips; it owned the tank which Woods was driving at the time he was killed (Woods owned the chassis or truck on which the tank was placed). The manager or auditor of the defendant company at frequent intervals inspected the station and audited the books and accounts, and on such visits he would give advice as to how the business ought to be conducted. Woods was required to make reports to the head office of the company at Glendive, Montana, at frequent intervals. During the first months of 1923 the defendant oil company advanced to Woods $100 per month (the amount of his former salary) with the understanding that this advancement would be adjusted later when there would be an increase in sales and, consequently, larger commissions would be earned. The manager of the defendant oil company testified as follows regarding the terms and conditions of the agreement existing between the defendant and Woods subsequent to January, 1923:
Q. Did you furnish any rules and regulations for Mr. Woods to follow after January 1st, 1923?
A. We instructed all our agents that the rules put up by the Texaco Company were to be followed.
Q. Do you know if your agents were furnished with a copy of the instructions? *Page 595 
A. Yes. . . .
Q. The contract with the Texaco Company was made by you and Mr. Hughes?
A. Yes.
Q. Made independently of your agents?
A. Yes.
Q. And that was simply passed on to your agents — they had to accept that agreement or get out of the business?
A. All the agents filled out an employment application to the Texaco Company and an application for bond — that is the requirement of the Texaco Company.
Q. They really were doing that because they were your agents. The contract with the Texaco Company was a contract with you and not with your agents?
A. Yes.
Q. And your agents had no authority or right to handle any other oil at your stations?
A. We wouldn't have permitted that. . . .
Q. Was he employed for some stipulated period or was the term of his employment left open?
A. We always reserved the right to release our employees — there was nothing definite.
Q. So that, if, for instance, he closed up for a week and paid no attention to the business you would have discharged him?
A. We would have put somebody else in his place. . . .
Q. You felt that you had the right to issue quite minute orders to Mr. Woods if you wanted to do so?
A. Yes.
Q. So there is no reason why Mr. Woods should not, up to the time of his death, be considered your employee?
A. He was in our employ to this extent — so far as the handling of the products there from that station, and when he was doing that he was working for us, but if he went out to haul coal or wheat he wasn't working for us.
Q. Even while he might have been doing something else on the side if you felt like doing so you felt that you had the right to take him away from that work and put him on your own work? *Page 596 
A. I don't think so.
Q. My question is about your feeling the right to do so.
A. I don't think I felt the right to do so.
Q. You don't think you had that right?
A. We had the right to change the agent. We had the right to have the work done as we wanted it done.
Q. Did you feel your rights toward Mr. Woods as an employee were unlimited?
A. We could have sent out a notice telling them to come to work at seven and to quit at six. We could have done that but we didn't.
According to the Workmen's Compensation Act of this state (§ 2) the term "employee" means "every person engaged in a hazardous employment under any appointment or contract of hire, . . . express or implied, oral or written. . . ." And the term "employer" means "the state and all political subdivisions thereof, and all public, quasi-public and private corporations therein and every person, partnership, association, private corporation, . . . carrying on a hazardous employment."
The fact that Woods worked on a commission basis and did not receive a fixed daily, weekly or monthly wage or salary as compensation for his services but received instead a certain percentage of the sales is not of controlling importance. Angell v. White Eagle Oil Ref. Co. 169 Minn. 183, 210 N.W. 1004; Lewis v. National Cash Register Co. 84 N.J.L. 598, 87 A. 345; Rouse v. Bird Island, 169 Minn. 367, 211 N.W. 327; Hillen v. Industrial Acci. Commission, 199 Cal. 577, 250 P. 570; Brown v. Industrial Commission, 174 Cal. 457, 163 P. 664; 1 Schneider, Workmen's Comp. § 39; State ex rel. Virginia R. Lake Co. v. District Ct.128 Minn. 43, 150 N.W. 211, 7 N.C.C.A. 1076; McKinstry v. Guy Coal Co. 116 Kan. 192, 38 A.L.R. 837, 225 P. 743, and note in 38 L.R.A. 39. See also Klemmens v. North Dakota Workmen's Comp. Bureau, 54 N.D. 496, 209 N.W. 972. Wages may be measured by time, by the piece or by any other standard that the parties either expressly or impliedly assent to. Hillen v. Industrial Acci. Commission, 199 Cal. 577, 250 P. 570; McKinstry v. Guy Coal Co. supra. It is not a question of the terms of the employment as regards payment of wages "but of using and putting the man *Page 597 
in a hazardous employment which the act has in view. . . . When it appears that a person is carrying on such hazardous employment for profit and that a person in his service whom he is employing or using therein receives an injury" the right of such person to protection under the act follows. Klemmens v. North Dakota Workmen's Comp. Bureau, supra. The Workmen's Compensation Act of this state recognizes that its provisions are applicable to cases of employment where a definite daily, weekly or monthly wage or salary has not been fixed by the parties. In defining "weekly wages" the act (§ 2) says: "Where, by reason of . . . the terms of the employment it is impractical to compute the rate of remuneration, regard may be had to the average weekly earnings, etc."
The authorities generally recognize that the primary test in determining whether a person performing labor for another is a servant or an independent contractor is whether the person for whom the service is performed is to have the right of exercising control over the performance of the work. Hillen v. Industrial Acci. Commission, supra; Industrial Commission v. Bonfils,78 Colo. 306, 241 P. 735; 1 Labatt, Mast. So.2d ed. § 3. "It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor." Industrial Commission v. Bonfils, and Hillen v. Industrial Acci. Commission, supra.
The authorities also recognize that the fact that the person for whom the service is being performed has the power to discharge the workman is an important factor in determining whether there is right of control and has a strong tendency to establish the existence of the relation of master and servant. 1 Labatt, Mast. So.2d ed. § 21; Hillen v. Industrial Acci. Commission, supra; Industrial Commission v. Bonfils, supra. Ordinarily the right on the part of the person for whom service is performed to discharge the person performing the service, without liability, is tantamount to control. Hillen v. Industrial Acci. Commission, and Industrial Commission v. Bonfils, supra. The undisputed evidence shows that the defendant company had the right to terminate the employment of Woods at any time without any resulting liability on its part.
We are wholly agreed that the evidence in this case establishes that the relator's husband at the time he sustained the injuries which *Page 598 
resulted in his death was an employee of the defendant company, and that such injuries were sustained by him in the course of his employment.
(4) Did the act of the relator, in making settlement with the railway company and accepting compensation from it, operate as a discharge of liability on the part of the defendant under the Workmen's Compensation Act or estop the relator from enforcing her claim against it? This question must be answered in the negative.
Workmen's compensation acts frequently, if not generally, provide that where an injury or death shall have been sustained through the negligence of some person other than the employer or a fellow employee, the injured employee (or his dependents in case death ensues) may elect whether to recover damages from the tort-feasor or apply for and receive compensation under the act; and that when compensation is paid under the act the insurer becomes subrogated to the right of action against the tort-feasor. And, where the Workmen's Compensation Act permits an employer to be a self-insurer he is generally recognized as having the same rights as any other insurer including the right of subrogation. But the Workmen's Compensation Act of this state does not permit an employer to be a self-insurer, or to provide insurance in any mode other than the one prescribed by the act. The act provides for the establishment of a workmen's compensation fund and requires every employer who comes within the purview thereof, to pay into such fund the prescribed premiums, and failure on the part of an employer to comply with the provisions of the act and pay the required premiums is deemed a breach of legal duty. Not only does the act make it incumbent upon the employer to provide the insurance therein prescribed for the benefit of his employee, but it inhibits the employee from waiving his right to compensation. Laws 1919, chap. 162, § 21. The purpose of the Workmen's Compensation Act is to afford to all "workmen injured in hazardous employments and their families and dependents, sure and certain relief . . . regardless of questions of fault." (Id. § 1). An employer who complies with the act is relieved from all liability for injuries sustained by his employee in the course of employment (Id. § 9). An employer who fails to comply with the act has imposed upon him by operation of law an absolute liability without regard to any question of fault *Page 599 
in all cases where liability for compensation would have existed on the part of the workmen's compensation fund in case the employer had complied with the act. An employer who has failed to comply with the act and whose employee is injured in the course of his employment by reason of the negligence of some person other than the employer or a fellow employee, is, of course, liable to his employee for compensation under the act. Such liability exists, not on account of the wrongful conduct of the tort-feasor, but on account of his own wrongful conduct in failing to comply with the Workmen's Compensation Act.
The Workmen's Compensation Act of this state, like similar acts elsewhere, recognizes that an employee who is entitled to compensation out of the workmen's compensation fund and who also has a right of action against some person other than the insurer, may elect to either claim compensation under the act or to bring action against the person who caused the injury; and that if compensation is claimed and awarded under the act the insurer (North Dakota workmen's compensation fund) is subrogated to the right of action against the tort-feasor. Tandsetter v. Oscarson,56 N.D. 392, 217 N.W. 660. The act (§ 20) provides:
"When an injury or death for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the North Dakota workmen's compensation fund a legal liability to pay damages in respect thereto, the injured employee, or his dependents, may, at his or their option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act, the North Dakota workmen's compensation fund shall be subrogated to the rights of the injured employee or his dependents to recover against that person, provided, if the workmen's compensation fund shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee or his dependents less the expenses and costs of action."
It will be noted, however, that these provisions are applicable only where insurance has been furnished under the Compensation Act and *Page 600 
that there is no provision requiring an injured employee or his dependents to elect whether he, or they, will seek recovery against an employer who has failed to comply with the Workmen's Compensation Act or against the person whose wrongful conduct caused the injury. Likewise, that the act makes no provision for the subrogation of a noninsured employer to the right of action against the tort-feasor. And indeed it would have been contrary to the spirit and tenor of the act to have made such provision, for the act clearly considers such an employer to be a wrongdoer, and properly subject to penalties rather than one to be favored and accorded the benefit of the doctrine of subrogation. The doctrine of subrogation is an equitable one and it is contrary to the policy of the law to afford the benefit thereof to a wrongdoer. 25 R.C.L. p. 1326.
At common law no action would lie to recover damages for the wrongful death of a human being although such death clearly involved pecuniary loss to the person seeking compensation. Mobile L. Ins. Co. v. Brame, 95 U.S. 754, 24 L. ed. 580; 17 C.J. pp. 1181 et seq. The right of action for wrongful death is statutory. 17 C.J. 1184, 1235. In this state the right to maintain such action is vested in the following persons in the order named: 1. The surviving husband or wife, if any. 2. The surviving children, if any. 3. The personal representative. Comp. Laws 1913, § 8323. The fact that the wrongful death incidentally injures an insurer of the life of the person killed creates no cause of action in favor of the insured and against the tort-feasor. Mobile L. Ins. Co. v. Brame, supra. It is well settled that ordinarily a person insured against injuries may recover both the compensation stipulated for in the policy and compensation from the wrongdoer as well. Reutenik v. Gibson Packing Co. 132 Wn. 108, 37 A.L.R. 830, 231 P. 773; 1 C.J. 518. In such case, the wrongdoer is in no position to assert that he ought not to be required to compensate the injured party because the latter has received compensation under a contract of insurance (Van Zandt v. Sweet, 56 Cal.App. 164, 204 P. 860; Gatzweiler v. Milwaukee Electric R. Light Co. 136 Wis. 34, 18 L.R.A.(N.S.) 211, 128 Am. St. Rep. 1057, 116 N.W. 633, 16 Ann. Cas. 633); and the insurer is in no position to assert that he ought to be relieved from complying with his contract because the insured may obtain, or has obtained, compensation from the tort-feasor. *Page 601 
Indeed it is well settled that in such case the insurer acquires no right against the tort-feasor unless the contract of insurance by its terms provides that the insurer shall be subrogated to the rights of the insured. 1 C.J. 518; 17 C.J. 1184; Gatzweiler v. Milwaukee Electric R. Light Co. supra; Reutenik v. Gibson Packing Co. and Mobile L. Ins. Co. v. Brame, supra. See also Interstate Teleph. Teleg. Co. v. Public Serv. Electric Co.86 N.J.L. 26, 90 A. 1062, 5 N.C.C.A. 524; 7 Cooley, Ins. 2d ed. pp. 6696, 6697.
In former decisions this court has called attention to the fact that many of the provisions of the North Dakota Workmen's Compensation Act were adopted from Ohio. Fahler v. Minot, 49 N.D. 960, 977, 194 N.W. 695; State ex rel. Dushek v. Watland, 51 N.D. 710, 720, 39 A.L.R. 1169, 201 N.W. 680. In construing the Ohio Act the courts of that state have held that the compensation provided by the Workmen's Compensation Act is in the nature of occupational insurance and like general insurance cannot be deducted and treated as an off-set for claims for damages for wrongful injury or death. Trumbull Cliffs Furnace Co. v. Shachovsky, 111 Ohio St. 791, 146 N.E. 306, Id. 27 Ohio App. 522, 161 N.E. 238; Brunk v. Cleveland, C.C. St. L.R. Co. 20 Ohio N.P.N.S. 360, 28 Ohio Dec. N.P. 320; Vayto v. River Terminal R. Co. 18 Ohio N.P.N.S. 305, 28 Ohio Dec. N.P. 401; Truscon Steel Co. v. Trumbull Cliffs Furnace Co. 120 Ohio St. 394,166 N.E. 368. See also Dayton Power Light Co. v. Westinghouse Electric Mfg. Co. (C.C.A. 6th) 37 L.R.A. 849, 287 Fed. 442.
Relator's right to recover from the railway company was predicated upon a different basis and required proof of a different state of facts from her right to recover from the defendant; and the measure of recovery in an action against the railway company would have been governed by quite different rules from those applicable in determining the liability of the defendant under the Workmen's Compensation Act. Suttles v. Railway Mail Asso. 156 App. Div. 435, 141 N.Y. Supp. 1024; Gatzweiler v. Milwaukee Electric R. Light Co. 136 Wis. 34, 18 L.R.A.(N.S.) 211, 128 Am. St. Rep. 1057, 116 N.W. 633, 16 Ann. Cas. 633; Ætna L. Ins. Co. v. Parker, 96 Tex. 287, 72 S.W. 168, 621; Newark Paving Co. v. Klotz, 85 N.J.L. 432, 91 Atl. p. 91. Liability on the part of the railway company was dependent upon the existence of actionable negligence on its part and the absence *Page 602 
of contributory negligence on the part of the relator's husband. Liability on the part of the defendant is not dependent upon any question of negligence or contributory negligence; that liability is one created by statute and is bottomed upon the defendant's failure to comply with the provisions of the Workmen's Compensation Act. In a word the liability of the railway company was governed and measured by the rules applicable in an action for death by wrongful act (Comp. Laws 1913, §§ 8321, 8322) while the liability of the defendant is controlled and measured by the provisions of the Workmen's Compensation Act. The compensation to be awarded under the Workmen's Compensation Act is based upon the average weekly earnings of the workman during the twelve months preceding the injury (Compensation Act, §§ 2, 3). In an action for death by wrongful act the damages to be awarded are such as the jury "think proportionate to the injury resulting from the death to the persons entitled to the recovery." Comp. Laws, 1913, § 8322.
The defendant in this case was in no manner concerned with the relator's cause of action against the railway company. Its rights and obligations could in no manner be affected by any act of the relator in regard thereto. If she decided not to bring suit against the railway company, obviously the defendant could not require such suit to be brought. Nor could the defendant, even if it had compensated the relator in accordance with the provisions of the Workmen's Compensation Act, have maintained an action against the railway company on the theory that it was entitled to re-imbursement for the moneys which it had been compelled to expend by reason of the death resulting from the negligence of the railway company. 17 C.J. 1184; Inter-state Teleph. Teleg. Co. v. Public Serv. Electric Co. 86 N.J.L. 26, 90 A. 1062. See also Mobile L. Ins. Co. v. Brame, supra; 7 Cooley, Ins. 2d ed. pp. 6696, 6697; Reutenik v. Gibson Packing Co. 132 Wn. 108, 37 A.L.R. 830, 231 P. 773; Trumbull Cliffs Furnace Co. v. Shachovsky, supra; Brunk v. Cleveland, C.C. St. L.R. Co. 20 Ohio N.P.N.S. 360, 28 Ohio Dec. N.P. 320; Vayto v. River Terminal R. Co. 18 Ohio N.P.N.S. 305, 28 Ohio Dec. N.P. 401; Truscon Steel Co. v. Trumbull Cliffs Furnace Co. 120 Ohio St. 394,166 N.E. 368.
The right of an injured workman or his dependent to compensation *Page 603 
under the Workmen's Compensation Act, and the right of such persons to recover damages from the tort-feasor where the injury or death has been occasioned by the negligence of some party other than the employer or a fellow employee, are so different in character, involve such different elements of liability and are predicated upon such different bases that in the absence of statutory provisions to the contrary the party or parties vested with such rights of action may pursue both; and the right to pursue one is not defeated by the pursuit and enforcement of the other; consequently, the release of one right of action does not in any manner affect the other. Newark Paving Co. v. Klotz, supra; Mercer v. Ott, 78 W. Va. 629, 89 S.E. 952. See also Mobile L. Ins. Co. v. Brame, 95 U.S. 754, 24 L. ed. 580; Ætna L. Ins. Co. v. Parker Co. 96 Tex. 287, 72 S.W. 621; 2 Schneider, Workmen's Comp. Law, § 501; Cooley, Ins. 2d ed. pp. 6696-6698; O'Brien v. Chicago City R. Co. 305 Ill. 244, 27 A.L.R. 479, 137 N.E. 214; Fox v. Dallas Hotel Co. 111 Tex. 461, 240 S.W. 517; Hardy v. Muensch, 195 Ky. 398, 242 S.W. 586.
Even though the right of subrogation had existed in favor of the defendant, relator's settlement with the railway company would not constitute a bar to plaintiff's cause of action here, for the defendant was not a party to or in any manner bound by the settlement. If the defendant had any right of action against the railway company, that right remains wholly unaffected by any adjustment that was made between the relator and the railway company. 2 Schneider, Workmen's Comp. Law, § 501.
Furthermore, according to the evidence there was no actionable negligence on the part of the railway company. Consequently, the relator had no cause of action against it for the death of her husband and whatever payment the railway company made to her was a voluntary contribution rather than compensation for the release of an existing valid cause of action against it. Globe Acci. Ins. Co. v. Helwig, 13 Ind. App. 539, 55 Am. St. Rep. 247, 41 N.E. 976; Hart v. National Masonic Acci. Asso. 105 Iowa, 717, 75 N.W. 508; Gatzweiler v. Milwaukee Electric R. Light Co. 136 Wis. 34, 18 L.R.A.(N.S.) 211, 128 Am. St. Rep. 1057, 116 N.W. 633, 16 Ann. Cas. 633. See also 1 Schneider, Workmen's Comp. Law, § 501.
It follows from what has been said that the trial court was in error *Page 604 
in dismissing the action. It should have ordered judgment in favor of the plaintiff for the amount demanded in the complaint. Accordingly the judgment appealed from must be and it is reversed and the cause is remanded with directions to enter such judgment.
BURKE, Ch. J., and BURR, NUESSLE, and BIRDZELL, JJ., concur.